Charles Lambiase, J.
The claim herein filed February 18, 1960 alleges that it is “ for damages sustained by claimant because of the breach of contract of a compensation insurance policy contract by the State Insurance Fund”. It was tried before us at a term of the court held in and for the City of New York; and counsel, having asked for time within which to file a memorandum of law and findings of fact and conclusions of law and to otherwise complete submission of the case, time was accordingly allowed. The case was finally submitted, the court receiving a transcript of the testimony of the trial on December 6, 1963.
The State of New York, on April 24, 1957, through the State Insurance Fund, hereinafter referred to as the Fund, issued to claimant a Workmen’s Compensation and Employers’ Liability Insurance Policy, Policy No. A 312-627. The “ declaration ” forming part of the above policy for the insurance contains the words “ 11 Pike Street, NYCity & elsewhere in NYS.” following the words ‘ ‘ location or all business operations, by town or city, with street and number ’ ’, and the words ‘ ‘ and elsewhere in NYS.” on the second line from the bottom.
On or about January 25, 1958 one, Raynor Wennestrand, while in the employ of claimant, Sam Sukup, was burned to death on a farm owned by claimant in Rock Rift, New York. A claim for compensation was made to the State Insurance Fund in connection therewith. The latter filed a notice of controversy setting up among other things the following:
‘ ‘ 9. This claim is contested by the employer and compensation therefore is not being paid by the carrier, for the reasons stated below:
*569 “ (Check each item of controversy and explain helow, grounds for position taken.)
“ (a) X Notice of accident death was not given as required.
“ (b) Claim was not timely filed.
“ (c) X Accident did not occur.
“(d) X Accidental injury did not arise out of and in the course of employment.
“(e) X Jurisdiction.
1 (f) Claimant is not disabled.
*“ (g) X Disability & death is not causally related.
‘ ‘ (h) X Other reason for contesting claim.
* Attach supporting medical reports. If already filed with Chairman, identify.
“Explain reason for controversy separately for each box checked in Item 9 above.
‘ ‘ a) notice of accident and death not given as per sec. 18
“ c) No industrial accident described
“ d) no injury occurred
“ e) 1. Coverage-our policy is restricted to 75 Monroe St. NYC
“ Alleged death occurred at Eock Eift, NY. We did not cover Eock Eift, NY
“ 2. Employee-Employer relationship
“ h) No medical reports received
Identification-formal proof-claimant single ”.
In sum, it denied that it covered the activities of the deceased on the date of his death and denied that, under the circumstances of decedent’s death, the policy covered the death, and asserted defenses — all as set forth in said notice of controversy— against the claim filed as the result of the death.
After the first hearing, the Fund obtained an adjournment and notified claimant’s then attorney, by letter dated October 27,1958, that:
“ It is our information that you are the attorney for the alleged employer, Samuel Sukop. The State Fund denies that it covered this, alleged employer for compensation insurance for this alleged accident which occurred on January 25,1958, at the Town of Tompkins, Delaware County, New York.
“ In view of the above facts, will you kindly arrange to be present at the hearing above mentioned and also notify Mr. Sukop, and also arrange to have him present.”
On the date mentioned in said letter, claimant appeared with his attorney. The matter was adjourned from time to time at which times the Fund, though defending the claim on the *570 grounds set forth in the afore-mentioned notice of controversy, persisted in its position with reference to the issue of coverage contending that claimant was only covered for activities of the deceased at premises at 11 Pike Street, New York City, and not elsewhere. Claimant, through his attorney, at all times has maintained that he was covered by the policy for such activities of the deceased.
The Referee in compensation, and subsequently the full Industrial Board, on appeal determined that claimant was indeed covered. It was finally determined also that there was liability in the amount of $2,100, which amount was paid by the Fund to a Special Fund as provided by law since decedent had left no known dependents surviving.
The issue presented to us may be stated as follows: Was there a breach of contract because of denial of coverage under the circumstances herein? If there was, then claimant is entitled to recover counsel fees of $850, no question being raised as to the reasonableness of the amount of said fees. If there was not, then the claim must be dismissed, other items of damage alleged in the claim having been withdrawn by claimant from the controversy.
The specimen policy, which is Exhibit 1, contains among other provisions the following:
“ in consideration of the payment of the premium stated in the declaration attached to and forming a part of this policy, the state insurance fund hereby insures the employer therein named as respects personal injuries sustained by his employees, including death at any time resulting therefrom as follows:
“One (a): * * *
“ One (b): * * *
‘1 Two : THE STATE INSURANCE FUND WILL DEFEND in the name and on behalf of this employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent ”.
It appears from the foregoing that defendant was obligated to defend even if the suit were groundless, and the insured had no liability. However, the distinction between liability and coverage must be kept in mind. 'So far as concerns the obligation of the insurer to defend, the question is not whether the injured party can maintain a cause of action against the insured, but whether he can state facts which brings the injury within the *571 coverage. If he states such facts, the policy requires the insurer to defend irrespective of the insurer’s ultimate liability.
It would seem that an insurance company may defend a claim made under a policy of workmen’s compensation insurance and in the same proceeding contest coverage of said policy (Matter of Jaabeck v. Crane’s Sons Co., 238 N. Y. 314, 322); and in the same case, the court says that if there be any doubt as to the meaning of its terms, the language should be given the meaning most favorable to the insured. It has been said by the Court of Appeals that such practice also prevails where quite conceivably the rights of the employer and of the carrier may be in conflict. (Matter of Cheesman, 236 N. Y. 47, 51.)
“ The relation between the employer and the carrier is entirely contractual. As said in Gans v. Ætna Life Ins. Co. (214 N. Y. 326, 330): 'The intent of the insured and the company * * * as expressed, binds and obligates both of the parties. Presumptively, their intent is expressed by the natural and ordinary meaning of their language referable to it and such meaning cannot be perverted or destroyed by the courts through construction. Where the parties by their words have left no fair reason for doubt, there is no just or defensible excuse for construction.’ While the policy should be construed, whenever construction is permissible, most favorably to the insured, the phraseology being the carrier’s, the coverage of the policy cannot be extended by the courts beyond its plain and natural meaning.” (Astrin v. East New York Woodwork Mfg. Co., 210 App. Div. 720, 721.)
In Heath v. State of New York (278 App. Div. 8, [revg. 199 Misc. 104], affd. 303 N. Y. 658) there was involved a question of reformation of the contract of compensation insurance. The court says at page 11: “ Thus, there could be little doubt that after the policy had been reformed to include the industrial operation in which the accident occurred, the carrier would have been deemed to have breached its contract to defend the compensation claim and to have been answerable to its insured for damages sustained when he undertook his own defense of the claim against him.” And in Great American Ind. Co. v. Audlane Realty Corp. (163 Misc. 301) the court said that there was a question of interpretation involved. In both the foregoing cases plaintiff was unsuccessful the court holding that under the circumstances there was no breach of contract. However, neither reformation nor interpretation nor construction is involved in the instant case for as is plainly stated in the *572 notice of controversy the only grounds alleged for noncoverage is as follows:
“ e) 1. Coverage-our policy is restricted to 75 Monroe St. NYC
“ Alleged death occurred at Bock Bift NY. We did not cover Bock Bift, NY ”.
In our opinion, what was said in Brassil v. Maryland Cas. Co. (210 N. Y. 235, 240-242) is peculiarly applicable here:
“ The mere statement of this unique situation indicates that the true measure of the rights of the plaintiff on the one hand and of the obligations of the defendant on the other is not to be found in the letter of the contract of insurance. * * * But there is a contractual obligation of universal force which underlies all written agreements. It is the obligation of good faith in carrying out what is written. The defendant’s failure to observe this requirement of the contract in suit is the thing upon which its liability may safely be predicated. * * *
‘6 In the light of these conditions it is idle to look to the letter of the insurance contract for the measure of the defendant’s liability, and the fact that there are no precedents for such an action as this, is a very impressive indication of the unusual and inequitable attitude of the defendant. Without attempting to further characterize the defendant’s position, it is enough to say that it would be a reproach to the law if there were no remedy for so obvious a wrong as was inflicted upon this plaintiff. His rights, as we have said, go deeper than the mere surface of the contract written for him by the defendant. Its stipulations imposed obligations based upon those principles of fair dealing which enter into every contract. * * * The circumstances of this case are peculiar. We do not go beyond them in making our decision. ’ ’
In our opinion the Fund failed to deal fairly and in good faith with claimant which was its obligation to the claimant in connection with carrying out what was written in the contract of compensation insurance. We have concluded that its denial of coverage and liability under the peculiar and particular circumstances of this case was in effect a breach of its contract and ‘ ‘ is the thing upon which its liability may safely be predicated” herein. The circumstances are peculiar and unusual. We do not go beyond them in making our decision.
While the letter of October 27, 1958 hereinbefore set forth in pertinent part did inform claimant of denial of coverage, it was not until March 2, 1959 that a decision was made by the hearing Beferee in which the amount awarded was fixed; and *573 it was not until December 2,1959 that said decision was affirmed and the case closed. The claim was filed February 18, 1960. We find no merit to the argument that the claim herein was not timely filed. (Court of Claims Act § 10, subd. 4; Dufel v. State of New York, 198 App. Div. 97, 102.)
All motions made by the Fund upon which decision was reserved are hereby denied with an exception on the record to the Fund.
In the light of the foregoing we find that claimant is entitled to judgment against the State of New York in the sum of $850 with interest thereon at 4% from December 2, 1959 to the date of entry of judgment herein.